Richard L. GIBSON, Plaintiff,

v.

MOHAWK RUBBER COMPANY, Defendant.

No. H–C–78–28.

United States District Court, E. D. Arkansas, E. D.

Sept. 2, 1981.

**1286**

Robert J. Donovan and William R. Gibson, Ray & Donovan, Marianna, Ark., Pettus & Johnson, Fayetteville, Ark., for plaintiff.

Harley M. Kastner and James Moody, Millison, Belkin & Nobil, Akron, Ohio, Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

This cause was tried before a jury in Helena, Arkansas, June 8 through 12, 1981. After instructions by the Court, the jury answered special interrogatories, as follows:

1. We the jury find from a preponderance of the evidence that the age of Plaintiff was a determining factor in his discharge.

2. We the jury find from a preponderance of the evidence that Plaintiff sustained damages in the amount of $97,-188.37 as a result of his unlawful discharge.

3. We the jury find from a preponderance of the evidence that Defendant was guilty of a willful violation of the Age Discrimination in Employment Act.

The Court had previously instructed the jury that its consideration was limited to certain legal remedies, whereas the Court would retain jurisdiction to resolve certain equitable issues.[1] *Cleverly v. Western Elec-*

*tric,* 594 F.2d 638, 18 FEP Cases 1335 (8th Cir., 1979).

On July 7, 1981 a precedent for jury verdict was entered providing for a judgment for Plaintiff in the amount of $97,-188.37, as well as a judgment for an equal amount of liquidated damages.

At the conclusion of the proceedings on June 12, 1981, the Court directed counsel for the Plaintiff and the Defendant to be prepared to proceed before the Court in Little Rock, Arkansas on August 10, 1981 with respect to the equitable issues and attorneys' fee question. Subsequent correspondence between the Court and counsel confirmed said date and the issues to be proceeded upon were defined.

At the August 10, 1981 hearing the Court specified that the issues to be heard would be whether or not Plaintiff was eligible for reinstatement; what, if any, additional pension compensation plaintiff should receive; whether any other equitable relief was available to Plaintiff; and, what attorneys' fees, if any, counsel for the Plaintiff should be awarded.

The Plaintiff chose to put on no testimony with respect to the question of reinstatement; whereas the Defendant recalled James M. Kitchin, Corporate Director of Personnel and Industrial Relations. With respect to the question of pension availability, Plaintiff called Peter Hanson, an actuary, and Defendant rebutted Mr. Hanson's testimony with testimony from Richard Barney, an actuary. During the course of the proceedings, counsel for Plaintiff and counsel for Defendant met and resolved the appropriate attorneys' fees and costs to be awarded to counsel for the prevailing Plaintiff.

At the conclusion of the equitable relief portion of these proceedings, counsel for the Plaintiff requested a determination by the Court with respect to the propriety of prejudgment interest for Plaintiff. The Court

---

1. Instruction No. 20 provided, in part: "If an interrogatory requires you to assess the damages of Mr. Gibson, you must then fix the amount of money which will reasonably and fairly compensate him for the value of the compensation by way of salary, together with specific monetary benefits, such as increased pension benefits, which Plaintiff would have been entitled to had he remained employed by Defendant until the trial date.

requested, and the parties have submitted, Memoranda of Law in support of their conflicting opinions on the propriety of such relief.

Based on the proceedings, the Court herein enters its Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

Plaintiff, Richard L. Gibson, who was born February 9, 1924, was employed by Defendant, Mohawk Rubber Company on several different occasions. Most recently, he was continuously employed by the Company from July 15, 1963 until his termination on March 23, 1978. At the time of his termination, Gibson was the General Manager of Mohawk's West Helena, Arkansas tire-producing facility. At the time of Gibson's termination, Mohawk also operated tire-producing facilities in Akron, Ohio and Salem, Virginia, as well as non-tire-producing facility in several other locations in the United States.

The jury found that Mr. Gibson's age was a determining factor in the Company's 1978 termination of Gibson. Upon termination, the Company paid Gibson his full salary and benefits, including contributions to the salaried pension plan, through August, 1978. Furthermore, the Company carried Gibson on its payroll on a leave of absence until February, 1979 when Gibson reached age fifty-five. In July, 1978, while still on the Company payroll, Gibson reached fifteen years continuous service with the Company. Under the provisions of the Company's salaried pension plan, Gibson became 100 percent vested. Also, upon obtaining age 55, Gibson was eligible, if he so chose, to opt for a reduced early retirement pension or, alternatively, to defer receipt of such pension until a later date.

In November, 1978, Mohawk closed its oldest tire-producing facility in Akron, Ohio. This closure had a direct impact upon the salaried workforce, both at that plant and in the corporate staff. Mr. Kitchin testified that corporate-wide salaried employment dropped from 318 in November, 1978 to 225 in January, 1979 as a result of the Akron plant closure. Amongst

the employment casualties resulting from the Akron closure was Jake Stafford, General Manager. Although Mr. Stafford had worked various jobs throughout the tire plant and had significant Company service (1945 hire date), he was not given an opportunity to either "bump" a less senior General Manager in the other two tire plants or a manager outside the tire division or to transfer to a lesser position.

Substantial testimony was presented during the trial of the instant action regarding the reasons why Mohawk subsequently closed the Helena facility. Company officials indicated the plant could not be operated profitably under the restrictive work practices existing in the labor agreement with the union. Nevertheless, on May 22, 1979 the Company announced its decision to permanently close the Helena facility on June 9, 1979. Subsequent to said closure, Mr. Theodore Ferrell, Gibson's replacement as General Manager, was terminated July 31, 1979 when the General Manager's position at Helena was eliminated due to the plant closure. Ferrell was not provided with any opportunity to transfer elsewhere within the Mohawk Rubber Company. From November, 1978 when three tire plants were operating until August, 1979 when two of those plants had been permanently closed, the salaried work force (including office clericals, sales, research and development, etc.) had declined from 318 to 181.

Finally, by June 12, 1981, the date of this trial's completion, the salaried work force at Mohawk had dropped to 173—a 54% reduction from the pre-Akron closure staffing of 318.

## CONCLUSIONS OF LAW

Plaintiff's expert testimony with respect to Plaintiff's present value lump sum pension entitlement sought to establish a present value dollar figure it would take to make up the difference between Plaintiff's pension entitlement as of February, 1979 versus what that entitlement would have been had he remained continuously employed at the same base salary until age 65.

This amount was derived by taking the difference between Plaintiff's monthly entitlement at age 55 and his monthly entitlement at age 65.

■ The Court finds that the approach used by Plaintiff to establish alleged pension entitlement is simply too speculative. There can be no assurance that Plaintiff will survive to age 65. There can be no assurance that his job and/or salary would have so survived. As a matter of fact, the irrefutable evidence shows that even if Plaintiff had not been terminated in March, 1978, his job would have been eliminated subsequent to the plant closure in July, 1979. To compel the Defendant to "carry" an employee some ten years beyond his bona fide job termination for pension funding purposes to age 65 is not warranted in this factual setting.

■ In order to make the Plaintiff whole, Defendant shall contribute additional monies to its pension plan on behalf of Plaintiff until February, 1979, when Plaintiff reached age 55, and qualified for early retirement and when he had become 100% vested. The Company's contributions to the fund shall be based upon the assumption that Plaintiff received the same salary as he was receiving upon the date of his termination.

■ The question of reinstatement is rather easily disposed of. As of July, 1979 Plaintiff's job no longer existed. Furthermore, the unrebutted testimony of Mr. Kitchin established that there had been a tremendous depletion of the Company's salaried work force (54% between November, 1978 and the date of trial) resulting from plant closures and general business conditions. Had Mr. Gibson not been unlawfully terminated in March, 1978, he still would have lost his job upon the plant closure. Two years after that plant closure, the salaried work force employment picture has not improved. Thus, the Court finds that there is no comparable job within the Company to which Plaintiff might be reinstated and his request for same is hereby denied.

During the course of the August 10, 1981 proceedings in Little Rock, counsel for the Plaintiff and counsel for the Defendant amicably resolved the questions of Plaintiff's entitlement to attorneys' fees and costs. Thus, this issue is not before the Court.

■ With respect to the question submitted to the Court regarding Plaintiff's entitlement to prejudgment interest on the amount awarded him by the jury, the Court has reviewed the positions submitted by the parties. In the instant case the jury awarded Plaintiff an amount of liquidated damages equal to its back pay award. The amount of liquidated damages awarded Plaintiff far exceeded the amount of any prejudgment interest to which Plaintiff might otherwise have been entitled.

The Age Discrimination Act of 1967, P.L. 90–202 effective June 12, 1968, as amended by P.L. 95–256, effective April 6, 1978, is incorporated in the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. Section 7(b) of the Act provides:

"The provisions of this Act shall be enforced in accordance with the powers, the remedies, and procedures provided in Sections 11(b), 16 (except for subsection [a]) thereof, and 17 of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. 211(b), 216, 217) and subsection (c) of this section."

Thus, the enforcement scheme of the Fair Labor Standards Act is applicable in evaluating the allowability of prejudgment interest to a prevailing plaintiff.

The seminal case in interpreting the availability of prejudgment interest under the Fair Labor Standards Act is *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707–14, 65 S.Ct. 895, 902–05, 89 L.Ed. 1296, 5 WH Cases 232 (1945). In that case, the United States Supreme Court evaluated the propriety of allowing prejudgment interest where a provision in the statute provided for liquidated damages. The Court noted that:

"Since Congress has seen fit to fix the sums recoverable for delay, it is inconsistent with Congressional intent to grant recovery of interest on such sums in view of the fact that interest is customarily allowed as compensation for delay in payment. To allow an employee to recover

the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages. Allowance of interest on minimum wages and liquidated damages recoverable under § 16(b) tends to produce the undesirable result of allowing interest on interest. Congress by enumerating the sums recoverable in an action under § 16(b) meant to preclude recovery of interest on minimum wages and liquidated damages. 324 U.S. at 715–16, 5 WH Cases 240 (Citations omitted; Emphasis added)."

Subsequent to the *Brooklyn Savings Bank* case, the Sixth Circuit Court of Appeals has had occasion to evaluate this provision in *McClanahan v. Mathews*, 440 F.2d 320, 19 WH Cases 1051 (6th Cir., 1967), as has the Fourth Circuit in *Masters v. Maryland Management Company*, 493 F.2d 1329, 21 WH Cases 604 (4th Cir., 1974). Both Courts have specifically found that where liquidated damages are awarded under the Fair Labor Standards Act, these damages are to compensate an employee for the loss of the use of his wages between the time of the violation and the court-ordered award. Furthermore, to award both prejudgment interest and liquidated damages would result in a double recovery for the plaintiff. The only Court of Appeals which has specifically evaluated this matter with respect to the provisions of the Age Discrimination in Employment Act is the Fourth Circuit in *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 25 FEP Cases 376 (4th Cir. 1981). In that case the Fourth Circuit adopted the *Brooklyn Savings* rationale finding that where liquidated damages have been awarded to a prevailing plaintiff in an age discrimination case, prejudgment interest is particularly inappropriate.

Since the Eighth Circuit has not specifically ruled on the question of prejudgment interest, this Court is persuaded by the logic of *Spagnuolo v. Whirlpool, supra*, in applying the United States Supreme Court reasoning in *Brooklyn Savings Bank, supra* to a proceeding under the Age Act. Accord-ingly, no prejudgment interest will be awarded.

Counsel for the plaintiff has filed a memorandum of law relying generally on the provision of the backpay award as provided in § 626(b) of the ADEA to be enforced as provided for in § 216 of the Fair Labor Standards Act. 29 U.S.C. § 201 et seq. (1965). In support of this contention, numerous cases are cited. However, a review and analysis of the cases reveals that they are misapplied. The line of cases cited do not reach the issue involved in this action since they do not reach the issue of willful violations as involved in the ADEA.

Certainly the case of *Rodgers v. U.S.*, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947) is misapplied in that it involves penalties incurred under the Agricultural Adjustment Act of 1938 in which the Court clearly stated the penalties do not bar interest in connection with penalties provided by the Act. Mr. Justice Black in speaking for the Court stated: "We are unable to say that it would be consistent with the Congressional purpose for the Court to add interest to these very substantial penalties already imposed upon the non-cooperating farmers." *Rodgers*, supra at 376, 68 S.Ct. at 8.

The District Court had rendered judgment for penalties plus interest from the dates the penalties became due to the date of the judgment. The Circuit Court of Appeals affirmed. 6th Cir., 158 F.2d 835. The Supreme Court reversed and held with the Fifth Circuit which had previously decided that no interest is allowable on such penalties prior to judgment. *United States v. West Texas Cotton Oil Co.*, 5th Cir., 155 F.2d 463.

Accordingly, judgment will be entered providing that the defendant is to pay to the plaintiff $194,376.74 with interest thereon at the rate of ten (10) percent as provided by law from June 12, 1981.

The judgment will include that the defendant will fund its salaried pension plan from September 1978 through February, 1979, with amounts equal to what would have been contributed thereto had the plaintiff remained on the payroll of the company until his fifty-fifth birthday.

Additionally, plaintiff's retroactive reinstatement shall be valid only from September, 1978 through February, 1979, for purposes only of the pension plan. Plaintiff will not be otherwise entitled to any retroactive or prospective reinstatement. The judgment shall also include that the plaintiff shall not be entitled to any prejudgment interest upon the award granted by the jury or upon any of the equitable portions of the award.

Counsel for the plaintiff and counsel for the defendant shall submit a signed agreement on costs and attorneys' fee for the review and approval of the Court.

The findings of fact and conclusions of law included herein are incorporated pursuant to Rule 52 of the Federal Rules of Civil Procedure.