United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
Nos. 97-2106/2107

| | | |
|---|---|---|
| Mark A. Stolzenburg, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the Eastern |
| Ford Motor Company, | * | District of Missouri. |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted:  March 9, 1998

Filed:  April 30, 1998

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
MONTGOMERY,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This suit arises from a number of decisions that the Ford Motor Company made
not to promote Mark Stolzenburg, then an employee of almost twenty years, to a more
senior managerial position.  Mr. Stolzenburg alleges, first, that, shortly after his fortieth
birthday, Ford removed him from "Private Salary Role" (PSR) status and designated
him as "Appropriately Placed" (AP), which meant at best that he was presumptively

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the
District of Minnesota, sitting by designation.

ineligible for further advancement within the company, and, second, that a number of younger and less qualified individuals were preferred to him. Mr. Stolzenburg claims that all of these decisions, including his AP designation, were made in violation of the Age Discrimination in Employment Act (ADEA), *see* 29 U.S.C. §§ 621-634, and the Missouri Human Rights Act, *see* Mo. Ann. Stat. §§ 213.010-213.137.

Although a jury found that four of the seven acts of which Mr. Stolzenburg complained were motivated by age, and the trial court entered judgment in his favor, Mr. Stolzenburg appeals, seeking the reversal of a partial summary judgment entered against him and a new trial on the issues of willfulness and punitive damages. Mr. Stolzenburg also seeks modification of the relief that the trial court ordered. Ford cross-appeals, claiming that the jury's answer to one interrogatory, the answers to the other interrogatories notwithstanding, precluded judgment against it.

## I.

All management employees at Ford (those at grade 9 and higher) receive an annual assessment of their performance and their potential for promotion. This review serves as an opportunity to give employees feedback on their performance and to identify and promote employees from within the lower tiers of management. Good performance evaluations are critical to an employee's advancement at Ford.

Mr. Stolzenburg has been continuously employed in the Parts and Services Division of Ford since May 9, 1972. Throughout his first fourteen years with Ford, he advanced steadily and performed successfully in progressively more responsible positions. In 1978, he was promoted to district field services manager (FSM) for Buffalo, New York, a lower-management, grade 9 position. Later, he was transferred to Ford's Dearborn, Michigan, headquarters. There he was told by a number of his supervisors that his career held the promise of advancement. In July, 1984, Mr. Stolzenburg, then thirty-eight years old, was transferred to the Parts and Services Division's St. Louis office to take over as the FSM there, a position that both

Mr. Stolzenburg and his supervisors understood was one from which he could expect future advancement.

In February, 1986, however, Mr. Stolzenburg was moved to a supporting grade 9 management position in St. Louis to allow a younger employee to take over the position of FSM, and Mr. Stolzenburg's career saw no more advancement. This appears to have come as a surprise to him, since, at least until 1986, he had consistently received above-average evaluations. Just four months after he changed positions and shortly after his fortieth birthday, his PSR job status (indicating that he had the potential for promotion to at least four more salary grades) was changed to AP job status. Although several of Mr. Stolzenburg's peers and supervisors advocated his advancement, he never received another promotion. He was passed over for promotion on six separate occasions between October 1, 1990, and February 1, 1991, in favor of employees who were younger and who had fewer years of experience both with Ford and in a grade 9 position.

The trial court submitted special interrogatories to the jury, asking whether age was a motivating factor in each of seven relevant employment decisions by Ford. The first interrogatory asked whether age was a motivating factor in Ford's decision to keep Mr. Stolzenburg in AP status. The succeeding interrogatories asked whether, in each of six specific instances, age was a motivating factor in Ford's choice to promote younger grade 9 employees instead of Mr. Stolzenburg.

While the jury answered the first interrogatory in the negative, it found that, in four of the other six employment decisions, age was indeed a motivating factor. The jury also found that Ford did not act willfully or recklessly in any of the instances in which Ford's decision was motivated by age. Finally, the jury found that different decisions would have been made if Ford had not been motivated by age. Upon receiving and reviewing these answers, the trial court entered judgment for Mr. Stolzenburg, awarding him $40,500 (the lost wages to which the parties stipulated)

and directing Ford to promote Mr. Stolzenburg to the next available grade 10 position. The trial court also awarded approximately $211,300 in attorney's fees to Mr. Stolzenburg.

## II.

Mr. Stolzenburg alleged in his complaint that instead of promoting him, Ford promoted more than twenty younger, less qualified grade 9 employees to available grade 10 positions. The trial court granted pretrial partial summary judgment to Ford, holding that relief to Mr. Stolzenburg for any employment decisions made before October 1, 1990, was barred by the 300-day statute of limitations in the ADEA. *See* 29 U.S.C. § 626(d)(2); *see also* 29 U.S.C. § 633(b). Mr. Stolzenburg argues that he was the victim of a continuing violation by Ford and therefore that the trial court erred in excluding evidence with respect to several instances when he was not promoted. We disagree.

In order to establish a continuing violation (which would allow Mr. Stolzenburg to put all of the denied promotions before the jury), a plaintiff must show that the acts of which he or she complains were not actionable as discrete violations of the applicable law. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). The only continuing condition under which Mr. Stolzenburg labored when he filed his EEOC complaint was his AP status. Because the denials of promotion that the trial court excluded from the case were discrete employment actions that occurred before the 300 days preceding Mr. Stolzenburg's filing of his EEOC complaint, *see* 29 U.S.C. § 626(d)(2), the trial court was correct in treating each as merely "an unfortunate event in history which has no present legal consequence[]." *United Air Lines, Inc. v. Evans*, 431 U.S. at 558.

## III.

Mr. Stolzenburg also asserts that the trial court erred by excluding two exhibits pertinent to Ford's employee evaluation system, and the related deposition testimony

of Jane Glotzhober, an employee of Ford's personnel office.  Without this evidence, Mr. Stolzenburg argues, he was unable to show that Ford acted willfully to violate the ADEA and was therefore unable to make a case for liquidated damages.

To be entitled to liquidated damages under the ADEA, a plaintiff must prove that the defendant willfully violated the act.  *See* 29 U.S.C. § 626(b).  This requires more than a mere demonstration that the defendant was aware that the statute was potentially applicable; since employers are required to post ADEA notices, virtually every employer would be aware that the act was potentially applicable.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127-28 (1985).  Rather, an employee must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993).  Mr. Stolzenburg contends that the two excluded exhibits (one entitled "Employee Evaluation:  Do's and Don'ts," the other entitled "Sales and Marketing Assessment of Potential Guidelines") tended to show that Ford was covering up past age-based decisions and thus that Ford willfully violated the act in the employment decisions that affected him.

"Do's and Don'ts" is intended to provide guidance to Ford managers who engage in the annual evaluations of employees.  It instructs managers on how to deal with employees who are certain to be disappointed by a performance evaluation and on how to reassure them that there are always ways of improving their chances for later promotion.  Of evident importance to Mr. Stolzenburg is the fact that the document tells managers not to discuss age in any manner with the employees.

The second exhibit is a memorandum from the personnel office of the department in which Mr. Stolzenburg was employed.  This document discusses a proposed modification in the evaluation and promotion process.  For example, under the practice in place during the relevant period, a management employee's "potential"

was presumed to be that of PSR grades 13 and 14 but could be gradually lowered if an employee proved himself or herself capable of only a more limited management role. The memorandum proposes that employees start from a more restricted presumptive ability and that as they prove themselves more capable, their potential rank would be raised. The document makes only a brief reference to age; it highlights the concern of the personnel office that some employees of Ford believed that promotions were based on age rather than merit. By adopting new performance review standards, the document suggests, Ford would avoid the litigation risks associated with employee assessments.

We find that any error in excluding these exhibits was harmless. If a trial court wrongly excludes evidence, we must be left with "no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted" before we will set aside the judgment. *Adams v. Fuqua Industries, Inc.*, 820 F.2d 271, 273 (8th Cir. 1987). The inference of willfulness on Ford's part, if any, that a reasonable person could draw from these documents is extremely weak at best. We therefore do not believe that these two documents, both of them dated after the period relevant in this case and neither of them related to Mr. Stolzenburg, would have altered the jury's verdict on willfulness. Since Ms. Glotzhober's deposition testimony dealt largely with the circumstances of how the documents came into being, we conclude as well that any error in excluding it was harmless.

IV.

Mr. Stolzenburg further maintains that the trial court improperly instructed the jury on the issue of willfulness. He argues that since Ford denied that it used age as a factor in making its employment decisions, it was not entitled to an instruction that its "good faith" would exempt it from punitive damages. *See Hazen Paper Co. v. Biggins*, 507 U.S. at 616.

The trial court, after giving the standard instruction on willfulness, added that if "by the greater weight of the evidence [you find] that Defendant in good faith and non-recklessly believed that Federal law permitted it to act as it did with respect to Plaintiff, then you may not find that the Defendant's conduct was 'willful.' " While this instruction contains language that does not find complete support in our cases, it does not do substantial violence to them, and, on this record, we believe that any error in the instruction was harmless at most.

## V.

Mr. Stolzenburg complains that the trial court refused to submit the issue of punitive damages to the jury, which he believes he was entitled to under the Missouri Human Rights Act. Under Missouri law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 803 (8th Cir. 1994) (internal quotation marks omitted). To merit an instruction to the jury on punitive damages under the Missouri statute, a plaintiff must produce evidence of conduct that shocks the conscience. *Id*. at 804.

While Ford did not promote Mr. Stolzenburg, there was no showing that Ford acted in an outrageous fashion: Ford offered Mr. Stolzenburg lateral transfers that could have helped restart his career, he was always eligible for merit raises within a grade 9 position, and he was never discharged from the company. After reviewing the record in the light most favorable to Mr. Stolzenburg, we conclude that there was insufficient evidence of outrageous conduct by Ford to warrant the submission of the matter of punitive damages to the jury.

## VI.

Finally, we find no error in the trial court's order for relief. The trial court has the authority "to grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the ADEA. *See* 29 U.S.C. § 626(b). The purposes of the ADEA are

"to make persons whole for injuries suffered as a result of unlawful employment discrimination" and "to restore [those] persons to the position where they would have been if the illegal discrimination had not occurred." *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1097 (8th Cir. 1982).

Given the applicable law, we see no merit in Mr. Stolzenburg's novel suggestion that his employment records should be changed to reflect that he is now a grade 10 employee and has been since October 1, 1990. For one thing, and perhaps this is the main thing, such a statement would be manifestly untrue. For another, Mr. Stolzenburg was awarded back pay commensurate with those lost years of grade 10 employment; we therefore cannot say that forcing Ford to change its records to reflect that Mr. Stolzenburg has been a grade 10 employee since 1990 would serve any useful purpose.

Mr. Stolzenburg's request that he be promoted to a grade 10 position within the St. Louis area is likewise without merit. Ford offered evidence that promotion within its ranks often requires that the employee relocate to a different city; forcing Ford to promote Mr. Stolzenburg within St. Louis might well make him better off than he would have been if Ford had not discriminated against him in the first place.

VII.

Ford cross-appeals, arguing that it was entitled to judgment because the jury's answer to the first interrogatory precluded a judgment for Mr. Stolzenburg. Ford contends that since the jury found that Ford's decision to keep Mr. Stolzenburg in AP status was not motivated by age, the jury was then precluded from finding that any of the six discrete employment decisions at issue was so motivated, because the evidence was all to the effect that Ford never promotes individuals who are classified as AP.

Ford did indeed present evidence that Mr. Stolzenburg, once placed in AP status, was not considered for any of these six promotions. At least one Ford employee,

however, testified that Mr. Stolzenburg was considered for a grade 10 promotion locally and regionally, even if he was not given final consideration at the national level. Furthermore, a number of Ford employees testified that individuals who had been designated as AP were sometimes promoted nevertheless. On this record, therefore, the jury could have found that employees in AP status had a harder time obtaining a promotion and that those responsible for promotion decisions needed to be convinced that such employees' abilities had truly improved, but that employees in AP status were not completely excluded from consideration for advancement.

## VIII.

For the foregoing reasons we affirm the judgment of the trial court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.