Benjamin E. **MASTERS**, Plaintiff, Appellant and Cross Appellee,

v.

**MARYLAND MANAGEMENT COMPANY**, Defendant, Appellee and Cross Appellant.

Nos. 73–1691, 73–1692.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1973.

Decided March 20, 1974.

er) which operated an apartment building known as Sutton Place Apartments in Baltimore under a Project Management Contract with the Federal Housing Administration (FHA). Masters was employed by oral agreement, which the court found to be that he agreed to work alternately short and long work weeks of fixed hours for a salary of $175 per week. After his discharge in 1969, Masters sued, alleging that the employer had not paid him overtime for all hours worked in excess of eight hours a day and 40 hours a week, had thus violated the applicable statutes, and should pay him back overtime pay and damages. The district court awarded judgment to Masters for $3,981.92. Both parties appeal. Because we find the judgment of the district court correct in every aspect of this somewhat complicated case, we affirm.

The issues are: (1) whether the Service Contract Act, 41 U.S.C. § 351 et seq, and the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 327 et seq, apply here, and, if so, whether they require a different computation of overtime than the Fair Labor Standards Act; and (2) whether the district court's computation of "regular rate" and its corresponding judgment based thereupon was correct.

Joseph F. Lentz, Jr., Baltimore, Md., for Benjamin E. Masters.

Joseph M. Roulhac, Baltimore, Md. (Smith, Somerville & Case, Baltimore, Md., on brief), for Md. Management Co.

Before BOREMAN, Senior Circuit Judge, and WINTER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This suit, with its many separate hearings spread over more than two years, concerns alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq, and other applicable statutes concerning minimum wages. Masters, the plaintiff, was an employee of Maryland Management Company (the employ-

Masters was employed as a resident stationary engineer for the employer for a total of 45 weeks; he was to live on the premises of Sutton Place Apartments and pay $215 a month for rent. There was no dispute as to the hours he was to work. During his short work week, Masters was to work a regular five day, eight hours per day, 40 hour, week, and was to be on call an additional sixteen hours a day on Tuesdays and Thursdays after his regular workday. Thus, the total at work or on call hours was 72 hours for the short week. During Masters' long workweek, he was to be at work or on call for 24 hours five days a week except Tuesday and Thursday, on which two days he was to work only eight hours, for a total of 136

hours. Other terms of employment were that Master was to wear uniforms which were furnished by the company, and he was to receive free telephone service and free parking space. Also, he was given the free use of a poolside cabana for twelve of the 45 weeks he was employed.

■ We are of opinion that the Contract Work Hours and Safety Standards Act, which was expressly made applicable by the contract between the FHA and Maryland Management to those employees who may be "laborers or mechanics" under the statute, and the Service Contract Act, which the district court also held applicable in this case, are both mutually supplemental to the Fair Labor Standards Act. The Supreme Court in Powell v. U. S. Cartridge Company, 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1940), has held the Walsh-Healey Act and the Fair Labor Standards Act mutually supplementary. The Fifth Circuit, relying on *Powell*, held that the Contract Work Hours and Safety Standards Act was supplemental to the Fair Labor Standards Act in Mitchell v. Empire Gas, 256 F.2d 781 (5th Cir. 1958). Similarly, Dowd v. Blackstone Cleaners, Inc., 306 F.Supp. 1276 (N.D.Texas 1969), held the Service Contract Act mutually supplemental to the Fair Labor Standards Act. These holdings lead us to believe that none of the three statutes are mutually exclusive of the other, but that the provisions of all may apply so far as they are not in conflict. A laborer is ordinarily entitled to be paid in accordance with the statutes requiring the greatest pay, but this does not mean no other parts of the other statutes may not affect him. The Secretary of Labor is in accord, as 29 CFR § 778.5 provides in part: "Where

such legislation is applicable and does not contravene the requirements of the Fair Labor Standards Act, nothing . . . should be taken to override or nullify the provisions of these laws."

■ The other statutes referred to do not in this case affect the computation of "regular rate" under the Fair Labor Standards Act. The Service Contract Act [1] was passed to provide labor standards for the protection of employees of contractors who perform maintenance service for federal agencies.[2] It speaks in terms of a "regular or basic hourly rate of pay," 41 U. S.C. § 355, in its provision restricting fringe benefit computation not allowed by the Fair Labor Standards Act. The Contract Work Hours and Safety Standards Act [3] assures that "laborers and mechanics" who work for government contractors are paid overtime for work in excess of eight hours a day and forty hours a week. This act terms the applicable rate a "basic rate," and requires overtime payment of at least one and one-half times that amount. 40 U.S.C. § 328(a). "Regular rate" under the Fair Labor Standards Act "must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments," and "actual fact." Walling v. Youngerman-Reynolds Hardwood Company, 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945). The computation of "regular rate" is, of course, the first step in computing an employee's overtime. The Service Contract Act explicitly states that "the regular or basic hourly rate of pay" will include no fringe benefits not includable in the regular rate under the Fair Labor Standards Act. 41 U.S.C. § 355. See also 29

1. U.S.Code Congressional and Administrative News, 1965, p. 3737.

2. No determination by the Secretary of any prevailing rate has been brought to our attention. Neither was it brought to the attention of the district court. See 41 U.S.C. § 351. Absent such determination, the effect of this statute on the outcome of this

case is at best illusionary and theoretical, for 41 U.S.C. § 351(b)(1) provides that minimum wages under that act are not less than those specified under 29 U.S.C. § 206(a)(1) of the Fair Labor Standards Act.

3. U.S.Code Congressional and Administrative News, 1962, pp. 2121–2122.

CFR § 4.55, § 778.7 and § 778.214(e)'. Similarly, 29 CFR § 4.15(c)(1) and (2) make clear that "basic rate" as used in the Contract Work Hours and Safety Standards Act is synonymous with "regular rate" under the Fair Labor Standards Act.

The district court made a finding of fact that Masters was a salaried employee whose employment contract was for $175 a week regardless of the number of hours worked. The court further found that Masters' sleeping time during the on call hours was at least five hours a night, and concluded that six hours' sleeping time should be deducted from each 24 hour period when Masters was on call. Both parties appeal this finding as to sleeping time. In making these findings, the court stated that it found Masters' testimony as to the terms of the employment contract and activity during on call hours incredible. There was testimony from other witnesses which showed that Masters at least did some work and received emergency telephone calls during the on call hours. Under the circumstances, we are unable to say that these findings of fact are clearly erroneous, and we leave them undisturbed. F.R.Civ.P. 52(a). It is clear that the court was justified in its finding that Masters was not working all the time he was on the premises, and we think its division of hours between working and sleeping is supported by the record. See also 29 CFR § 785.20 and § 785.23.

The district court determined Masters' "regular rate" by dividing his total period of employment into four categories: sixteen short non-cabana weeks of 60 hours' work; seventeen long non-cabana weeks of 106 hours' work; six short cabana weeks of 60 hours' work; and six long cabana weeks of 106 hours' work. The weekly value of Masters' free telephone and parking space was in-cluded in his salary for each category of workweek, and the weekly value of the cabana was included for the twelve weeks where it was used. Uniforms, which the employer furnished, and the apartment which Masters was required to rent for the convenience of the employer were not included as compensable items. The court then divided the hours worked into Masters' salary, including the items specified, to arrive at his "regular rate" for each category. These rates ranged from a low of $1.72 an hour for the long non-cabana weeks to a high of $3.12 an hour for the short cabana weeks. Overtime owed was computed by multiplying all hours worked over 40 hours a week by one and one-half times the "regular rate" for each of the four categories, and the court arrived at a total overtime owed of $1,990.96. An additional sum of $1,990.-96 was then added as liquidated damages under 29 U.S.C. § 216(b), giving Masters a total judgment of $3,981.92.[4] Since the full amount of liquidated damages was awarded, pre-judgment interest was held not recoverable.

The district court's computations are correct under the Act and applicable regulations and decisions. An employment contract providing for a fixed salary for fluctuating hours is specifically contemplated under 29 CFR § 778.114, and the court did just as the regulations and examples thereunder provide. The agreement questioned here was similar to the one discussed in Overnight Transport Company v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), and the district judge reached the same result as the Supreme Court did in that case.

Masters persists in his argument that his work week was of irregular hours for a fixed salary; and apparently takes the position that the agreement was an imperfect attempt to come within the exemptions of 29 U.S.C. §§ 207(f) and

4. Because Masters worked no day for less than eight hours, whether his overtime is calculated on the basis of eight hours a day or forty hours a week is academic.

(g)(3). See Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). The answer is that the facts he assumes in his argument are contrary to the findings of fact of the district court, which are based not only on affirmative oral testimony and written evidence but also his stated position filed with the district court. The contention is obviously without merit.

■ He then argues that the value of the uniforms and the apartment should also have been included as compensable wages. The uniforms are not facilities furnished by the employer within the meaning of 29 U.S.C. § 203(m). The regulations point out that facilities furnished primarily for the benefit or convenience of the employer should not be included in computing wages, and the district court found as a fact that they were so furnished. In any event, Masters' lodging on the premises was found as a fact to be for the benefit of the employer and the apartment was not furnished by the employer since Masters paid rent of $215 a month, and he was required to live on the property. See 29 CFR § 531.3(d)(1) and (2); § 531.29 and § 531.30.

■ The award of liquidated damages more than adequately compensated Masters for the delay in payment of overtime wages due him, and the district court was correct in its refusal to award pre-judgment interest. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 715, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).

■ Masters lastly complains that a minimum wage violation also occurred. In view of the fact that his regular rate was never less than $1.72 an hour, and as high as $3.12, well over the minimum wage required, it is obvious there was no minimum wage violation.

The judgment of the district court is accordingly

*Affirmed.*