**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1691

JORGE AMAYA; MIGUEL MARTINEZ; CARLOS A. REAL; JAIME
ZUBIETA; JOSE SANABRIA; DONACIANO CRUZ; CARLOS JOSE MUNOZ
BARILLAS; AMADA M. CLEMENTE; DAGOBERTO TREJO GUZMAN; MOISES
W. PORTILLA HUAMAN; MARIO ANTONIO SIGUENZA DIAZ; ROBERTO
CARLOS BONILLA REYES; JOEL CHRISTIAN GUEVARA; FRANCISCO
CABALLERO; RAUL D. AMPUDIA; CARLOS SAMUEL SANABRIA; JOSE
MANUEL CARTAGENA; MARDIN J. MOZ GIRON; JACOBO MEDINA
ZELAYA; JEFFREY O. COREA MONTALVAN; JUAN CAMPOS-PEREZ; JUAN
PABLO DE PAZ; MARCOS ANTONIO FLORES,

　　　　　Plaintiffs – Appellants,

　　　v.

POWER DESIGN, INC.,

　　　　　Defendant – Appellee.

-------------------------------------------
SECRETARY OF LABOR,

　　　　　Amicus Supporting Appellant.

ASSOCIATED BUILDERS AND CONTRACTORS, INC.,

　　　　　Amicus Supporting Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.　J. Frederick Motz, Senior District
Judge.　(1:14-cv-00446-JFM)

Argued: May 10, 2016　　　　　Decided: August 15, 2016

Before DIAZ, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Judge Diaz wrote the opinion, in which Judge Floyd and Judge Thacker joined.

————————

**ARGUED**: Daniel Adlai Katz, THE LAW OFFICES OF GARY M. GILBERT & ASSOCIATES, P.C., Silver Spring, Maryland, for Appellants. Leslie A. Stout-Tabackman, JACKSON LEWIS P.C., Reston, Virginia, for Appellee. Erin Michelle Mohan, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Secretary of Labor. **ON BRIEF**: Lucy Brierly Bansal, THE LAW OFFICES OF GARY M. GILBERT & ASSOCIATES, P.C., Silver Spring, Maryland; Virginia Rae Diamond, ASHCRAFT & GEREL, LLP, Alexandria, Virginia, for Appellants. Paul DeCamp, Jeremy S. Schneider, JACKSON LEWIS P.C., Reston, Virginia, for Appellee. M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, William C. Lesser, Deputy Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Secretary of Labor. Maurice Baskin, LITTLER MENDELSON, P.C., Washington, D.C., for Amicus Associated Builders and Contractors, Inc.

————————

DIAZ, Circuit Judge:

Appellants, over twenty electrical construction workers, (the "Electrical Workers" or "Workers") sought unpaid hourly and overtime wages from Appellee Power Design, Inc. for work completed under a federally funded subcontract between Walbridge/Brasfield Gorrie Joint Venture and Power Design.

As relevant to this appeal, the Electrical Workers brought suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., seeking unpaid minimum and overtime wages and liquidated damages. The district court granted summary judgment in favor of Power Design. For the reasons that follow, we vacate the court's judgment and remand for further proceedings.

I.

A.

In 2010, the U.S. Department of the Navy awarded Walbridge a federally funded prime contract to design and construct a facility at the National Naval Medical Center in Bethesda, Maryland. Walbridge entered into a subcontract with Power Design (the "NEX Contract") for electrical work at the new naval facility. The subcontract expressly incorporated the Davis-Bacon Act (DBA), 40 U.S.C. § 3141 et seq., and the Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. § 3701 et seq., but not the FLSA.

Power Design, in turn, hired RDZ Electric to complete electrical installation work at the new naval facility, and they agreed to be bound by the NEX Contract terms. Power Design later entered into an equivalent subcontract for electrical installation work with ES & R Construction.[1] The Electrical Workers worked for RDZ or ES & R, and their employment was governed by the relevant subcontract (and therefore also the NEX Contract).

B.

The Electrical Workers sued Power Design for violating the FLSA, but they did not bring claims under the DBA or the CWHSSA.[2] The Workers alleged that the subcontractor "routinely required" them both to work over forty hours each week and to arrive at the jobsite fifteen minutes early each day to prepare the site, but "did not permit [them] to sign-in on the sign-in sheet until" the work shift's "official" start time. J.A. A27. The Workers also alleged that although Power Design paid them (and provided some funds to cover the overtime hours), it did not compensate the Workers "all wages owed for each hour worked" and failed to pay them overtime at time-and-a-half their hourly rate, as required under the FLSA. J.A. A27–28.

---

[1] Power Design ultimately fired RDZ, citing its "repeated[] and persistent[] fail[ure] to demonstrate compliance with applicable federal statutes and regulations." J.A. A221.

[2] They also brought state law claims not relevant here.

4

Power Design moved for summary judgment, arguing that "no reasonable jury could possibly find that [it] violated the [FLSA]" because "there is no applicable independent cause of action for [the Workers'] overtime claims under the [DBA] . . . and the [CWHSSA]," which governed the subcontract under which the Workers performed. J.A. A173, A181–85.

The district court granted the motion, finding that "the contract between [the Electrical Workers] and [Power Design] was a federal one to which the [DBA] and the [CWHSSA] appl[ied]," and that neither act "provide[d] a private right of action but [provided] only for enforcement of the standards they impose by the Department of Labor." Amaya v. Power Design, Inc., No. JFM-14-446, 2015 U.S. Dist. LEXIS 69165, at *2 (D. Md. May 28, 2015). Accordingly, the Electrical Workers "c[ould ]not circumvent those statutes by bringing claims under the [FLSA]." Id.

This appeal followed.

## II.

Because the district court dismissed the Electrical Workers' claim at summary judgment, we review that decision de novo to determine whether there is no genuine dispute of material fact and that Power Design is entitled to judgment as a matter of law. U.S. Dep't of Labor v. N.C. Growers Ass'n, 377 F.3d 345, 350 (4th Cir. 2004).

5

As we explain, we find nothing in the relevant statutes barring the Electrical Workers from pursuing an FLSA claim. We begin our analysis with a review of the relevant statutes and cases. Then we turn to the merits.

A.

1.

The DBA and CWHSSA apply to federal (or federally funded or assisted) construction contracts and subcontracts, though they regulate different aspects of the employment relationship. The DBA applies to federal construction contracts valued over $2,000, and it requires contractors and subcontractors to pay their employees a "prevailing" wage set by the Secretary of Labor that consists of a "basic hourly rate of pay" and fringe benefits.[3] 40 U.S.C. §§ 3142(a)–(b), 3141(2). Although the DBA does not require overtime compensation, it specifies the calculation of overtime wages under "any federal law" to be based on the "regular or basic hourly rate" determined by the Secretary. § 3142(e) (citing § 3142(2)(A)). The CWHSSA applies to "any" federally funded or assisted construction contracts and

---

[3] Under the DBA, "fringe benefits" are employer payments or contributions to "a trustee or to a third person under a fund, plan, or program," such as health insurance, life insurance, or a pension. 40 U.S.C. § 3141(2)(B). Payments required by federal, state, or local law, such as Social Security, do not qualify as fringe benefits. Id.; see also Davis-Bacon and Related Acts Frequently Asked Questions, U.S. Dep't of Labor, https://www.dol.gov/whd/programs/dbra/faqs/fringes.htm (last visited June 15, 2016) (saved as ECF opinion attachment).

subcontracts for public works that are valued over $100,000, and requires contractors and subcontractors to pay their employees time and one-half their "basic rate of pay" for all hours worked over forty each week.  §§ 3701, 3702(a).

Congress passed the DBA in 1931 to set an earnings floor for federal contract employees, to protect against substandard wages, and to promote the hiring of local labor.  See Univs. Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 771, 773–74 (1981); S. Rep. No. 88-963, at 2 (1964), as reprinted in 1964 U.S.C.C.A.N. 2339, 2339–40.  The CWHSSA has a complementary objective: to "bring order to the confusion which . . . marks the application and enforcement of work standards legislation in employment that results from Federal Government contracts or employment."  S. Rep. No. 87-1722, at 1 (1962), as reprinted in 1962 U.S.C.C.A.N. 2121, 2121; see also Janik Paving & Constr., Inc. v. Brock, 828 F.2d 84, 89 (2d Cir. 1987) (discussing the act's purpose).  Specifically, the CWHSSA seeks to make the eight-hour day, the forty-hour workweek, and corresponding overtime pay applicable uniformly to federal contract and subcontract work.  S. Rep. No. 1722, at 2.

While the DBA and CWHSSA regulate different aspects of federal construction contracts, they have similar enforcement mechanisms, which are internal to the Department of Labor but reviewable under the Administrative Procedure Act, 5 U.S.C.

7

§ 702.  See 40 U.S.C. §§ 3143–44, 3703.  In the case of a violation, both statutes provide for the withholding of contract funds by the Department of Labor (to pay under- or unpaid employees at the prevailing rate) and the possibility of an up to three-year ban on the award of federal contracts to the breaching contractor or subcontractor.  §§ 3142(c)(3), 3144, 3703(b); see also 29 C.F.R. § 5.12.  The CWHSSA also provides for daily assessed liquidated damages and, in some cases, criminal liability.  40 U.S.C. §§ 3703(b), 3708; 29 C.F.R. § 5.8.

Caselaw suggests that neither statute provides a private right of action.  See Coutu, 450 U.S. at 768–69, 771–84 (holding that the DBA "does not confer a private right of action for back wages under a contract that administratively has been determined not to call for Davis-Bacon work," but declining to decide "whether the Act creates an implied private right of action to enforce a contract that contains specific [DBA] stipulations"); see also, e.g., Bane v. Radio Corp. of Am., 811 F.2d 1504, 1987 WL 35851, at *1 (4th Cir. 1987) (unpublished table decision) ("[T]here is no implied right of private action under the [DBA]."); United States ex rel. Glynn v. Capeletti Bros., Inc., 621 F.2d 1309, 1316–17 (5th Cir. 1980) (concluding the same); Koren v. Martin Marietta Servs., Inc., 997 F. Supp. 196, 217 & n.28 (D.P.R. 1998) (noting the lack of case law discussing a

8

private right of action under the CWHSSA but concluding that, based on Supreme Court precedent and the act's regulatory scheme, an implied right of action likely does not exist).

2.

The FLSA, on the other hand, has both a broader purpose and a different means of enforcement. It was passed "to eliminate, as rapidly as practicable, substandard labor conditions throughout the nation" and "to raise living standards without substantially curtailing employment or earning power." Powell v. U.S. Cartridge co., 339 U.S. 497, 509-10 & nn.11-12 (1950), superseded on other grounds by statute, e.g., Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, 80 Stat. 830, as recognized in Graham v. Town & Country Disposal of W. Mo., No. 4:10-CV-00551-NKL, 2010 WL 3927756, at *2 (W.D. Mo. Oct. 4, 2010).

The FLSA sets a federal minimum wage and maximum forty-hour workweek for all employees covered under the act, and it requires covered employers to pay their employees time and one-half their "regular rate" for all hours worked in excess of forty each week. 29 U.S.C. §§ 206, 207. And unlike the DBA and CWHSSA, the FLSA clearly provides a right of action; employees may sue in state or federal court for unpaid minimum wages and overtime compensation, plus liquidated damages. § 216(b).

9

B.

We find two cases instructive to the issue presented here, Powell v. U.S. Cartridge Co., 339 U.S. 497, and Masters v. Maryland Management Co., 493 F.2d 1329 (4th Cir. 1974).

Both cases address the interplay between the FLSA and laws similar in kind and structure to the DBA and CWHSSA. In Powell, workers sued their employers, government contractors, for unpaid overtime under the FLSA even though the employment contract invoked the Walsh-Healy Act, a law that also regulates federal contract employment, and does not expressly incorporate the FLSA. See 339 U.S. at 499–502.[4] The employers, as relevant here, argued that the acts "should be construed as being mutually exclusive." Id. at 519.

The Court did not agree. First, the Court considered the statutes' distinct purposes and applications—most notably, that while the Walsh-Healey Act applies narrowly to a limited class of government contracts valued over $10,000, Congress intended the FLSA to apply broadly, with "narrow and specific" exceptions. Id. at 515–17. The Court then noted—as shown by the FLSA's "Relation to Other Laws" provision, 29 U.S.C. § 218— Congress' "awareness that the coverage of the [FLSA] overlaps

---

[4] A booklet distributed to the workers by one of the employers provided that the employer "w[ould] pay the legal overtime rate as provided under the Walsh-Healy Act, and the [FLSA]." Powell, 339 U.S. at 501 (emphasis added). This fact did not affect the employer's argument or the Court's analysis.

10

that of other federal legislation affecting labor standards," including the Walsh-Healy Act.  Id. at 517–18.  Nor was it lost on the Court that the employers failed to show any "instance[] . . . where compliance with one Act makes it impossible to comply with the other."  Id. at 519.  The Court thus concluded that the acts are "not mutually exclusive" so that "[t]he applicability of the Walsh-Healy Act . . . does not preclude the application of the [FLSA]."  Id. at 519–20.

In Masters, we confronted a similar question: whether the FLSA, CWHSSA, and the Service Contract Act (another federal labor statute governing federal contract and subcontract work) could apply concurrently, and, if so, whether the CWHSSA and the Service Contract Act require a different overtime calculation than the FLSA.  493 F.2d at 1331–32.  Relying in part on Powell, we held that the acts are not "mutually exclusive" and that "the provisions of all may apply so far as they are not in conflict." Id. at 1332.

As to overtime compensation, we found that applying the Service Contract Act and the CWHSSA does not affect the computation of overtime under the FLSA.  This is because "regular rate" under the FLSA is "synonymous" with "basic rate" under the CWHSSA, id. at 1333, and both acts mandate that overtime be "not less than one and one-half times" that rate, 29 U.S.C. § 207(a); 40 U.S.C. § 328(a) (current version at 40

11

U.S.C. § 3702(a)).  Similarly, the Service Contract Act, like the FLSA, excludes fringe benefits from the overtime calculation.  Masters, 493 F.2d at 1332–33.

C.

Applying these cases in the context of the Electrical Workers' complaint, we discern no conflict in the reach of the three statutes before us.  Rather, we are satisfied that Congress intended the FLSA to apply broadly notwithstanding any overlap with other labor statutes.

As the Supreme Court noted in Powell, the FLSA's scope "was stated in terms of substantial universality amply broad enough to include employees of private contractors working on public projects," such as the Electrical Workers, and the act's "specificity in stating exemptions strengthens the implication that employees not thus exempted, such as employees of private contractors under public contracts," e.g., the Electrical Workers, "remain within the Act."  339 U.S. at 516–17; see also 29 U.S.C. § 213 (listing FLSA exemptions, none of which apply to the Workers).  Moreover, the FLSA's plain language envisions that it would be applied along with other federal labor legislation.  See 29 U.S.C. § 218(a) (stating that the FLSA's minimum wage requirement does not excuse noncompliance with "any" federal law that mandates a higher wage); Powell, 339 U.S. at 517–18.

12

Similarly, the text and purpose of the DBA and CWHSSA plainly envision concurrent application with one another and with the FLSA. As we've noted, the CWHSSA's overtime requirements are expressly applicable to federal contracts, including those covered by the DBA. See 40 U.S.C. §§ 3701, 3702. And Congress was aware when it passed the CWHSSA that the FLSA already applied to "much of the construction industry," meaning that with the CWHSSA's concurrent application, "many contractors may well find themselves governed by several different legislative standards and enforcement procedures applicable to the same conduct." S. Rep. No. 87-1722, at 18 (1962), as reprinted in 1962 U.S.C.C.A.N. 2121, 2133.

The same is true of the DBA. See 40 U.S.C. § 3142(e) (explaining the calculation of overtime pay "under any federal law" (emphasis added)); see also 29 C.F.R. §§ 5.32(a) (specifying overtime pay under the DBA when the FLSA and CWHSSA apply concurrently), 778.6 (stating that DBA-covered workers may be subject to the FLSA's overtime provision). Moreover, the Senate Committee Report accompanying the legislation that created the DBA's overtime provision, 40 U.S.C. § 3142(e), lists the FLSA as one of the "existing Federal laws" under which DBA-governed overtime may be calculated. See S. Rep. No. 88-963, at 7 n.1.

Power Design's arguments otherwise are not persuasive. It points to excerpts from the Department of Labor's Prevailing Wage Resource Book's section on "Overtime Pay on DBA/DBRA[5] Contracts" as evidence that the FLSA does not apply when employees work exclusively on a subcontract governed by both the DBA and the CWHSSA. But the excerpts do not support Power Design's position: In them, the Department of Labor provides that the FLSA may apply to DBA contracts regardless of whether they are governed by the CWHSSA, see U.S. Dep't of Labor, Prevailing Wage Resource Book Tab 10, at 4 (2014), which plainly refutes Power Design's argument.

The Resource Book also states that, "[u]nless specifically exempted" from the FLSA, employees who work on federally funded (or assisted) and commercial projects in the same workweek must receive overtime compensation for hours worked over forty. Id. at 5. It does not follow from that instruction that the FLSA does not apply when the employees work solely on government contract (or subcontract) work in a given workweek. See also Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants at 25–26, Amaya v. Power Design, Inc. (No. 15-1691) (stating that the Department of Labor's "longstanding

---

[5] According to the Resource Book, DBA/DBRA stands for "Davis-Bacon Act and Davis-Bacon 'related Acts.'" U.S. Dep't of Labor, Prevailing Wage Resource Book Tab 2 (2014).

14

interpretation [of the acts] reflected in the[]" Resource Book excerpts supports the Workers' position).

Several other purported conflicts arising from the concurrent application of the three statutes evaporate on closer examination. First, that the DBA and CWHSSA do not provide an implied private right of action does not amount to a conflict with the FLSA. See Lee v. Flightsafety Servs. Corp., 20 F.3d 428, 431 (11th Cir. 1994) ("It is possible that the FLSA may allow a private right of action even though the [Service Contract Act] does not. Such a difference between the two statutes is not a conflict." (citation omitted)); see also Powell, 339 U.S. at 519 (explaining why employees may prefer to pursue administrative remedies in some instances and FLSA remedies in others).

Second, that the DBA requires the payment of wages that may be higher than the FLSA's federal minimum wage is not a conflict. See 29 U.S.C. § 218(a). Power Design has not shown that it is impossible to determine "in each instance, the respective wage requirements under each Act, and then apply[] the higher requirement . . . [in order to] satisfy[] both." Powell, 339 U.S. at 519. Indeed, in this case, the DBA's higher hourly wages, see J.A. A231 (listing prevailing wages under the NEX Contract), satisfy rather than contradict the FLSA's

15

compensation floor, see 29 U.S.C. § 206 (providing the federal minimum wage).

Third, calculating overtime under each statute does not create a statutory inconsistency or conflict. In that regard, we note that the CWHSSA's and FLSA's maximum-hour-workweek and overtime requirements are the same. See 29 U.S.C. § 207(a) (directing overtime be paid at one and one-half times the employee's "regular rate"); 40 U.S.C. § 3702(a) (directing overtime be paid at one and one-half times the employee's "basic rate of pay"); Masters, 493 F.2d at 1333 (calling "synonymous" the CWHSSA's "basic rate" and the FLSA's "regular rate").

Further, the DBA's directives to use the prevailing cash rate and to exclude fringe benefits when calculating overtime dovetail with the FLSA's overtime computation. Although Power Design says otherwise, the FLSA and DBA both require the exclusion of fringe benefits when calculating overtime. See 29 U.S.C. § 207(e) (precluding fringe benefits from the "regular rate" determination under the FLSA); 40 U.S.C. §§ 3141(2)(A), 3142(e) (directing overtime "under any federal law" to be computed using the DBA's "basic hourly rate of pay" and not fringe benefits); see also 29 C.F.R. § 5.32(a) ("The [DBA] excludes amounts paid by a contractor or subcontractor for fringe benefits in the computation of overtime under the [FLSA]

16

[and] the [CWHSSA] . . . whenever the overtime provisions of any of these statutes apply concurrently with the [DBA] . . . .").

As for using the higher hourly wage when calculating overtime under the FLSA, the DBA directs this course. It specifies that "[i]n determining the overtime pay to which a [worker] is entitled under any federal law, the regular or basic hourly rate of pay (or other alternative rate on which premium rate of overtime compensation is computed) . . . is deemed to be the rate computed under [§] 3141(2)(A)," 40 U.S.C. § 3142(e), which is "the basic hourly rate of pay"—or the DBA's "prevailing wage[]" minus fringe benefits, § 3141(2)(A).

Thus, when we turn to the FLSA, which requires overtime be "not less than one and one-half times the regular rate at which [the worker] is employed," 29 U.S.C. § 207(a)(1), we supplant "regular rate" with the DBA's prevailing basic hourly rate. This statutory interplay creates no conflict between the acts, and is entirely consistent with Supreme Court and circuit precedent. See Powell, 339 U.S. at 519 (stating that the higher hourly rate satisfies both the Walsh-Healy Act and the FLSA); Masters, 493 F.2d at 1332 ("'Regular rate' under the [FLSA] 'must reflect all payments which the parties have agreed shall be received regularly during the work week, exclusive of . . . actual fact.'" (quoting Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945))).

17

Power Design nonetheless insists, relying on another Department of Labor regulation, that the Electrical Workers' claim for unpaid overtime compensation exposes a conflict. The argument goes as follows: The Electrical Workers sought overtime compensation at one-and-a-half times the hourly rate they were paid rather than the rate set by the Secretary of Labor. But, says Power Design, the Department of Labor has interpreted the DBA to prohibit such lower overtime compensation. See 29 C.F.R. § 5.32(a) ("[I]n no event can the regular or basic rate upon which premium pay for overtime is calculated under the [FLSA or CWHSSA] be less than the amount determined by the Secretary of Labor as the basic hourly rate . . . under [the DBA]."). Ergo, there is a statutory conflict between the DBA and the FLSA in this case.

The Electrical Workers' proposed overtime calculation was in response to Grochowski v. Phoenix Construction, the only circuit case to directly address the computation of overtime under the FLSA on a DBA-governed contract, which found that the calculation must be "limited . . . to one-and-a-half times the hourly rates actually paid." 318 F.3d 80, 87 (2d Cir. 2003) (emphasis added). Notably, however, the Workers' complaint did not limit overtime to a calculation based on the lower hourly wage; rather, they asked for "a sum that will properly, adequately and completely compensate [the Electrical Workers]"

18

and that the court "[a]ward each [Electrical Worker] . . . his or her unpaid overtime wages . . . pursuant to [the FLSA]." J.A. A33.   Similarly, they argue on appeal that calculating overtime on the basis of the hourly rate that they should have been paid under the DBA "would also produce a favorable and legally sound result."  Reply Br. at 15.

In any event, a plaintiff's request for less in damages than that to which he is entitled does not a legislative conflict make.  Moreover, we will not defer to a regulation that creates a statutory conflict between the DBA and the FLSA where one does not exist.  So even if section 5.32(a) meant what Power Design urges here, we would ignore it.  See Chevron, U.S.A., Inc. v Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–44 (1984) (explaining that we defer to an agency's interpretation of a statute only when (1) the statute is ambiguous and (2) the agency's interpretation is reasonable); see also Skidmore v. Swift & Co., 323 U.S. 134, 138–140 (1944) (providing that the "weight of a[n agency's interpretation of a statute] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade").

Relatedly, Power Design argues that because the Electrical Workers seek overtime on the basis of the hourly wages they

19

actually received, which is less than the prevailing wage rates prescribed by the Department of Labor, the district court cannot determine the proper overtime owed to the Workers because of the statutory mandate to exclude the fringe rate in the calculation. In support, they again cite to the Department of Labor's regulation. See § 5.32(c)(1) ("[I]n some cases a question of fact may be presented in ascertaining whether or not a cash payment made to laborers or mechanics is actually in lieu of a fringe benefit or is simply part of their straight time cash wage. In the latter situation, the cash payment is not excludable in computing overtime compensation.").

The scenario imagined in section 5.32(c) is of no moment. That regulation explains that the rate used in calculating overtime will be either the prevailing cash rate or a higher amount if the employee has been paid at a cash rate higher than the one prescribed by the Secretary of Labor. See § 5.32(c)(1)-(3); see also id. at § 5.32(a) ("The contractor's contributions or costs for fringe benefits may be excluded in computing such [rate on which overtime is calculated] so long as the exclusions do not reduce th[at rate] below the basic hourly rate contained in the [prevailing] wage determination." (emphasis added)).

Here, the Electrical Workers allege that they were paid less than the prevailing hourly rate. Additionally, the record

20

contains: (1) the prevailing rates (set by the Secretary of Labor) applicable to the NEX Contract, J.A. A230–35; (2) certified payroll records submitted to the Department of Labor's Wage and Hour Division, which indicate that some of the Workers[6] were classified as Electricians entitled to the $37.60 cash hourly rate and $12.28 fringe rate set by the Secretary under the NEX Contract, J.A. A237–337; and (3) affidavits by additional Workers stating that they, too, were Electricians paid below the prevailing NEX Contract rate, J.A. A380–85, A412-15, A447–49. In our view, this is an issue of proof rather than a legislative conflict, which the district court can address on remand.

One final point. At oral argument, Power Design contended for the first time that there was a question of fact regarding the Electrical Workers' FLSA overtime calculation because there are different classifications for electricians and laborers, all of which have different cash and fringe rates and "several of which could potentially be applicable here." Oral Argument at 22:11–22:54. We generally do not consider arguments raised for the first time on appeal (much less when sprung on us at oral argument), In re Under Seal, 749 F.3d 276, 285 (4th Cir. 2014),

---

[6] The payroll records in the Joint Appendix do not account for all named appellants. Those whose payroll records were included, however, are classified exclusively as Electricians.

21

and decline to do so here.  In any event, this, too, is a matter of proof best left for the district court.

III.

In light of the statutory texts, which admit of no conflict, and the similarities between <u>Powell</u>, <u>Masters</u>, and this case, we hold that the statutes at issue apply concurrently to the Electrical Workers' employment arrangement.  Accordingly, the district court erred in granting summary judgment to Power Design.

<u>VACATED AND REMANDED</u>

22